# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**DERRICK GLENN ESTELL**                                                                **PLAINTIFF**
**ADC #147330**

**V.**                           **NO. 4:20-cv-00815-BSM-ERE**

**WITNI KNOWLES**                                                                       **DEFENDANT**

## RECOMMENDED DISPOSITION

### I.     Procedure for Filing Objections:

This Recommendation has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

### II.    Summary:

Plaintiff Derrick Glenn Estell, an inmate in the Arkansas Division of Correction (ADC), filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983

against multiple defendants.[1] Mr. Estell claims that the remaining defendant, Witni Knowles, a licensed practical nurse, was deliberately indifferent to his serious medical needs on March 12 and 13, 2020.[2]

Pending before the Court is Ms. Knowles' motion for summary judgment, statement of facts, and brief in support. *Docs. 115, 116, 117*. Mr. Estell responded in opposition (*Doc. 125*), Ms. Knowles replied (Doc. 126), and Mr. Estell responded to the reply. *Doc. 127*.

For the reason explained below, the Court recommends that Ms. Knowles' motion for summary be granted and all remaining claims be dismissed, with prejudice.

### III. Summary Judgment Standard:

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

---

[1] The Court previously dismissed Mr. Estell's claims against Defendants Cunninham, Layton, Reed, Carroll, Shipman, Gibson, and Payne based on Mr. Estell's failure to state a constitutional claim against them. *Doc. 7*. The Court dismissed Mr. Estell's claims against Defendants Washington, Martin, Boultinghouse, O'Connor, Wallace, Minor, Tobi, Royal, Ogbozor, and Garrison based on his failure to fully exhaust his administrative remedies, as to those claims. *Doc. 82*.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See Fed. R. Civ. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

## IV. <u>Background:</u>

The undisputed facts,[3] viewed in a light most favorable to Mr. Estell, are these. On March 12, 2020, a chemical smell from a roof repair infiltrated Mr. Estell's cell and caused him to experience chest pain and difficulty breathing. *Doc. 116-2 at 16, 26-27, 53*. At approximately 6:15 p.m., Ms. Knowles was dispensing medication to other inmates in Mr. Estell's cell block, and he told her about his symptoms and requested to be removed from his cell. *Doc. 116-1 at 3; Doc. 116-2 at 22*.

---

[3] Pursuant to Local Rule 56.1, the Court deems admitted all material facts set forth in Ms. Knowles' statement of material facts (*Doc. 116*) unless controverted by Mr. Estell's responsive statement of facts (*Doc. 125*).

Mr. Estell recalls that Ms. Knowles responded that he looked fine and that she was busy. *Doc. 116-2 at 22*. Ms. Knowles' treatment notes record that she observed that Mr. Estell's respiration was even and nonlabored, and his skin was warm and dry to the touch. *Doc. 116-1 at 4*. Ms. Knowles also documented that Mr. Estell expressed fear that he had the coronavirus, but after asking him questions about his health, she assured him that he did not. *Id*.

When Ms. Knowles continued to distribute medication, Mr. Estell yelled that he was suicidal.[4] *Doc.116-2. at 24*. Mr. Estell readily admits that he was not suicidal at the time and that he feigned the condition so that the prison staff would remove him from his cell. *Id. at 16-17. 66*.

In addition to falsely claiming that he was suicidal, Mr. Estell cut his left wrist with a razor blade, causing what he now describes as a "paper cut." *Doc. 116-1 at 3; Doc. 116-2 at 39*. Officers arrived to remove Mr. Estell from his cell, and in the process, he sustained five cuts to his right arm due to a sharp edge on his trap door. *Doc. 116-1; Doc. 116-2 at 17, 45*. Mr. Estell's medical records document that he suffered: (1) "multiple superficial lacerations . . . to inner left wrists"; (2) abrasions to both wrists; and (3) "2 deep lacerations . . . to ulnar side of right forearm." *Doc. 116-1 at 4*.

---

[4] According to Defendant Knowles' notes, Mr. Estell stated, "Hell, I guess I'm suicidal." *Doc. 116-1 at 4*.

Officers escorted Mr. Estell to the shower area, and Ms. Knowles arrived with medical supplies to address the cuts on his arms. *Doc. 116-2 at 30*. Mr. Estell has Hepatis C, a blood-borne disease, and his lacerations were bleeding, leaving a large amount of blood on the floor. *Doc. 116-1 at 4*. Ms. Knowles' treatment record states that Mr. Estell was yelling and would not stay still, but she managed to clean his right arm and apply a gauze dressing around the deep laceration on his right forearm. *Doc. 116-1 at 4*. However, Mr. Estell "snatched" his arm back into the shower and removed the dressing.[5] *Id*. Given Mr. Estell's erratic and combative behavior, Estella Bland, an advanced practicing nurse, was notified. Ms. Bland gave orders to maintain the safety of the medical staff and to allow Mr. Estell to calm down, while being observed and restrained, if necessary, before he received additional treatment. *Id*.

Approximately one hour later, Ms. Knowles again attempted to dress Mr. Estell's wounds in the shower area. Mr. Estell allowed her to wipe the area on his right forearm with gauze, and she applied a nonadherent pad, gauze, and roll gauze to secure the dressing. *Doc. 116-1 at 4.* Despite receiving encouragement from mental health personnel called to the scene, Mr. Estell again pulled the dressing off

---

[5] In his deposition, Mr. Estell explained that he snatched his arm back into the shower because an unknown officer started spraying mace. *Doc. 116-2 at 30*. He also testified that he did not believe that Defendant Knowles attempted to bandage his arm while he was in the shower. *Id. at 56*. Mr. Estell later contradicted that statement. *Id. at 48*.

and refused to allow Ms. Knowles to provide any further medical treatment.[6] *Id*. Ms. Knowles told Captain Martin, a member of security staff present, that Mr. Estell needed a pressure dressing applied to his right arm and, based on the amount of blood that he had lost, further assessment. *Id*. Warden Gibson then issued an order to use the restraint chair, if necessary, so that Mr. Estell could receive medical treatment. *Id*.

Once Mr. Estell was in the restraint chair, Defendant Knowles applied: (1) pressure dressing to his right arm, from the wrist to upper forearm; and (2) two large bandages to his left inner-wrist, over the superficial lacerations. *Id*. According to Ms. Knowles' treatment report, Mr. Estell yelled the entire time. *Id*.

Security staff then moved Mr. Estell to a suicide-watch cell for observation where, according to Mr. Estell, multiple officers punched, kicked, and tased him while he was fully restrained. Mr. Estell claims that Ms. Knowles failed to check on him after witnessing the incident. *Doc. 116-2 at 32*. Ms. Knowles' treatment record states that "use of force was used to remove inmate from [the] restraint chair and to be placed in the cell after several direct orders were given." *Doc. 116-1 at 4*. The treatment record continues: "Inmate is to be monitored in camera cell and placed on treatment precaution." *Id*.

---

[6] In his deposition, Mr. Estell testified that he was unclear how many times Defendant Knowles checked on him while he was in the shower. *Doc. 116-2 at 48*. He stated that he "was laying in the floor coming in and out of it." *Id*.

At 1:41 a.m. the next day, Ms. Knowles performed a wellness check on Mr. Estell and recorded the following in her treatment notes:

> Inmate is pacing around cell, yelling that medical staff attempted to kill him. Inmate states that medical staff held him down and cut his arms. Inmate has removed the dressing to his right arm. No active bleeding noted. Soiled dressing removed from inmates possession to prevent further injury. Inmate refused to have any further medical attention.[7] Inmate will continue to be observed in camera cell in isolation 4 on treatment precaution.

*Id. at 5*. Later that day, Mr. Estell allowed another nurse to apply dressing to his wounds. *Id. at 7; Doc. 116-2 at 62*.

## V. **Discussion:**

Mr. Estell claims that Ms. Knowles demonstrated deliberate indifference to his serious medical needs when she: (1) failed to remove him from his cell after he complained about chest pain and breathing problems from chemical fumes; (2) attempted to provide him medical treatment in the shower; and (3) failed to check on him after officers used physical force against him in the suicide-watch cell.[8]

---

[7] In his deposition, Mr. Estell testified that he did not "believe" that he had ever refused medical care during the incidents giving rise to this lawsuit. *Doc. 116-2 at 64*.

[8] In response to summary judgment, Mr. Estell argues that Ms. Knowles also failed to attempt to stop security officers from assaulting him in the suicide-watch cell. *Doc. 125 at 2*. The Eighth Circuit has held that parties cannot "manufacture claims, which were not pled, late in the litigation for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).
  In his complaint, Mr. Estell alleged that Ms. Knowles failed to attend to his medical needs until 11:45 p.m. when she gave him a "cursory review," after he was put into a restraint chair. *Doc. 2 at 8-9*. He also alleged that Ms. Knowles was "outside the door" the entire time that officers allegedly assaulted him in the suicide-watch cell. Mr. Estell did *not* allege facts to support a

7

The "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). Deliberate indifference in this context has objective and subjective components; a prisoner must show: (1) that he suffered from objectively serious medical needs; and (2) that prison officials knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Ms. Knowles does not dispute that Mr. Estell suffered objectively serious medical needs, but she contends that summary judgment is proper because he cannot show that any conduct on her part amounted to deliberate indifference. She submits the affidavit of Chris Horan, M.D., Regional Medical Director for Wellpath, LLC. *Doc. 116-3*. Dr. Horan testifies that after reviewing Mr. Estell's medical records for March 1 through April 10, 2020, it is his medical opinion that "Mr. Estell had appropriate access to healthcare and that he was provided with appropriate care and treatment for his complaints on March 12, 2020, and March 13, 2020, by Ms. Knowles." *Doc. 116-3 at 3-4*.

---

plausible claim that Ms. Knowles demonstrated deliberate indifference by failing to intervene and protect him from the alleged assault.
    In addition, the Court previously ruled that Mr. Estell may proceed "only on the deliberate-indifference claim against Defendant Knowles as set out in grievance VSM-20-818." *Docs. 79, 82*. In that grievance (*Doc. 13-4 at 26*), Mr. Estell complained that *after* Ms. Knowles watched him getting "stomped and tazed" in the suicide-watch cell, she failed to check on him or report the incident. He did not allege that Ms. Knowles failed to intervene and to protect him from the alleged assault while it was in progress.

8

"In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Thompson v. King*, 730 F.3d 742, 746–47 (8th Cir. 2013). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Thus, Ms. Knowles can be held liable only if her actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

In addition, disagreement with treatment decisions cannot support a deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Where medical records show that treatment was provided, and a physician's affidavit state that the care was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Under this standard, no reasonable fact finder could find on the undisputed record that Ms. Knowles was deliberately indifferent to Mr. Estell's serious medical needs.

### A. Failure to Remove Mr. Estell From His Cell

Even if Ms. Knowles had the authority and ability to remove Mr. Estell from his cell as he requested, her failure to do so, at most, amounted to negligence. Despite Mr. Estell's contemporaneous complaints that he was having difficulty breathing and chest pain, he presents no evidence that Ms. Knowles was aware that he had a serious medical need or that she refused to provide him essential care. According to Ms. Knowles' treatment notes, Mr. Estell's respiration was even and nonlabored, and his skin was warm and dry to the touch. *Doc. 116-1 at 4*. And when Mr. Estell stated, "Hell I guess I'm suicidal," Ms. Knowles notified security staff. *Id*. Such conduct can hardly be characterized as "criminally reckless."

### B. Failure to Provide Medical Care in the Shower

Mr. Estell does not dispute that Ms. Knowles attempted to provide him medical treatment after he had been moved to the shower area. Furthermore, he acknowledges that she treated his wounds after he was moved to the restraint chair. Again, Mr. Estell has failed to present any evidence that Defendant Knowles' conduct amounted to "intentional maltreatment."

### C. Failure to Provide Medical Care in the Suicide-Watch Cell

Mr. Estell argues that Ms. Knowles left him unattended after witnessing officers assault him. He contends that she was obligated to check on him, but she walked away and did nothing.

Mr. Estell does not allege that he requested medical treatment after he was placed in the suicide-watch cell; nor does he specify what his medical needs were at that point. It is undisputed that at 1:41 a.m., Ms. Knowles performed a wellness check on Mr. Estell, and he continued to be uncooperative and to refuse medical attention. According to Ms. Knowles' treatment notes, Mr. Estell stated, "Get the fuck away from my cell*.*" Doc. 116-1 at 5.

Ms. Knowles' efforts to provide Mr. Estell medical care were obstructed by his own conduct, which negates a finding of deliberate indifference. See *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (finding no evidence of deliberate indifference where prison officials' attempts to provide medical care were continually rebuffed by inmate's refusal to comply with recommended treatment); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) (finding no evidence of deliberate indifference where prisoner was unable or refused to follow doctors' instructions).

Finally, to the extent that Mr. Estell claims that a delay in receiving medical treatment amounted to the deprivation of constitutionally required medical care, his claim fails. "When an inmate claims that a delay in medical care violates the Eighth Amendment, 'the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay in treatment.'" *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original). "A prisoner alleging a delay in treatment must present

11

verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Id.* (quoting *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)). Mr. Estell submits no evidence that a delay in his receipt of medical care adversely affected his prognosis.

In sum, the record lacks evidence from which a reasonable juror could conclude that Ms. Knowles actually knew of and deliberately disregarded Mr. Estell's serious medical needs at any time on March 12 or 13, 2020.

## VI. <u>Conclusion</u>:

IT IS THEREFORE RECOMMENDED that:

1. Defendant Knowles' motion for summary judgment (*Doc. 115*) be GRANTED, and judgment be entered in her favor.

2. Plaintiff Estell's remaining claims be DISMISSED with prejudice; and

3. The Clerk be directed to close this case.

DATED this 28th day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE